**In the Matter of M.K. and K.K., Children in Need of Services.**

**Paula Sokol, Appellant–Respondent,**

**v.**

**Porter County Office of Family and Children, Appellee–Petitioner,**

**Mark Sokol and Jean Sokol, Appellees– Guardian Intervenors,**

**Court Appointed Special Advocate, Appellee.**

**No. 64A03–0701–JV–36.**

Court of Appeals of Indiana.

May 31, 2007.

Bryan M. Truitt, Law Offices of Tsoutsouris and Bertig, Valparaiso, IN, Attorney for Appellant.

Lois Jones Holiday, Porter County Office of Family and Children, Valparaiso, IN, Attorney for Appellee.

## OPINION

KIRSCH, Judge.

Paula Sokol ("Sokol") appeals the trial court's denial of her motion to terminate

the guardianship of her two children, fifteen-year-old K.K. and twelve-year-old M.K. Sokol raises one issue, which we restate as: Whether the trial court erred in denying her petition.

We reverse and remand.[1]

## FACTS AND PROCEDURAL HISTORY

Sokol and Jeff Klinge are the parents of K.K. and M.K. The couple divorced in the 1990's after Klinge was convicted of child molesting.[2] The dissolution court awarded Sokol physical custody of both girls. Sokol took them both to counseling with Sandy Krittenbink.

Sokol eventually became involved with Joe Capadagi, who treated the girls as if they were his own daughters. In September 2000, the girls found Capadagi dead of an overdose of prescription pills. Sokol was so grief-stricken and depressed that she became suicidal. In October 2000, she overdosed on prescription pills. Both girls were placed in foster care and adjudicated to be children in need of services ("CHINS"). Sokol maintained contact with the girls in their supportive foster care environment while she completed court-ordered services. Both girls were well-behaved, straight-A students, who were very close to their mother.

Sokol appeared to be doing so well that the court ordered a family reunification in June 2002. However, Sokol, who had not been drug-free for very long, was still feeling depressed and was worried about supporting the girls because she was un-

---

1. We note that the only appellee to file a brief was the Porter County Office of Family and Children ("OFC"). That brief consists of two pages with seven sections. Under each section, OFC states only that it agrees with the corresponding section in the Appellant's brief.

2. Neither K.K. nor M.K. was a victim. An investigation found no evidence of abuse of either girl.

employed. She believed that it would not be long before a termination petition would need to be filed, and she was too scared to tell anyone that she was not ready for reunification. The day the girls were scheduled to return home, Sokol took an overdose of prescription pills, and the reunification was cancelled.

Because of a statutory time requirement, a petition to terminate Sokol's parental rights was filed. No one wanted to see the termination of Sokol's parental rights because of the bond that existed between her and her daughters. As an alternative permanency plan, Sokol's brother and sister-in-law in Arizona were granted guardianship of the girls in August 2002, and the petition to terminate was dismissed. In April 2005, Sokol filed a petition to terminate the guardianship. The trial court held a hearing on the petition in May 2006. Testimony at the hearing revealed that before the girls were born, Sokol graduated from Southern Illinois University with a degree in anthropology. She was, and always had been, very close to her daughters, who continued to be straight-A students with no behavior problems. The only previous concerns about Sokol's parenting abilities were related to her drug use and depression.

Sokol testified at the hearing that she completed a program at the Women's Recovery Home as well as an intensive outpatient program. According to her testimony, she had been sober since January 2003, and attended four to seven AA or NA meetings per week, led recovery groups, and sponsored other members. As of the hearing date, she was seeing a therapist regularly and taking medication for her depression. The therapist reported that Sokol was emotionally stable and at low risk to relapse.

In addition, Sokol has been involved in a stable relationship with Jeff Fidnarik for four years. They have a home in Valparaiso that is suitable for K.K. and M.K., and Sokol has arranged counseling for the girls with their former therapist, Sandy Krittenbink. Fidnarik is employed, and Sokol receives Social Security Disability benefits and will receive child support from the girls' father. Sokol has kept in regular contact with K.K. and M.K. during the course of their guardianship. She speaks to them at least three times a week, and sometimes daily. The girls also have spent extended unsupervised visits with Sokol, including two months in the summer and two weeks at Christmas.

The guardians did not attend the hearing and did not cross-examine Sokol. In October 2006, the trial court issued an order that provides in relevant part as follows:

19. The reasons for the guardianship remain the same today. Instead of giving support to her children in a stressful time, the mother was unable to cope. Ms. Sokol testified that it was a combination of grief, depression and a growing addiction to alcohol and prescription pain medication that cause[d] her to become suicidal. It was her inability and issues which prevented her from being a parent.

20. The mother testified that she understands that she cannot disappoint the girls once again. She understands what is needed for their emotional well-being, but is now willing to take a chance.

21. The Court now denies the mother's petition. She has long acquiesced in the placement of the children. Their mother voluntarily relinquished their care to their aunt and uncle; the relationship of the girls, their aunt, uncle, and cousins have become so interwoven that to sever

the living arrangement would seriously mar and endanger the future happiness of these children.

22. The Court finds that it is in the best interests of these children to be with their aunt and uncle in Arizona. The children are happy and safe in their home. It would be emotionally detrimental to these children to be taken out of this environment.

*Appellant's App.* at 12. Sokol appeals.

## DISCUSSION AND DECISION

When considering a custody dispute between a natural parent and a third party, there is a presumption in all cases that the natural parent should have custody of his or her child. *In re Guardianship of L.L.,* 745 N.E.2d 222, 230 (Ind.Ct.App. 2001), *trans. denied.* The third party bears the burden of overcoming this presumption by clear and cogent evidence. *Id.* Evidence sufficient to rebut the presumption may, but need not necessarily, consist of the parent's present unfitness, or past abandonment of the child such that the affections of the child and third party have become so interwoven that to sever them would seriously mar and endanger the future happiness of the child. *Id.* at 230–31.

However, a general finding that it would be in the child's "best interest" to be placed in the third party's custody is not sufficient to rebut the presumption. *Id.* at 231. If a decision to leave or place custody of a child in a third party, rather than a parent, is to be based solely upon the child's "best interests," as opposed to a finding of parental unfitness, abandonment, or other wrongdoing, such interests should be specifically delineated, as well as be compelling and in the real and permanent interests of the child. *Id.*

In *L.L.,* Mother left her son in the paternal grandmother's ("Grandmother") care in 1992 because of her depression and substance abuse. Grandmother was appointed the child's guardian in October 1992. Mother unsuccessfully attempted to dissolve the guardianship in October 1993 and in May 1994. Mother filed another petition to dissolve the guardianship in 1995, which was also denied. Mother filed a fourth petition to terminate the guardianship in September 1998. The trial court held a hearing on the petition in May 2000.

Evidence presented at the hearing revealed that Mother was employed and involved in a stable relationship with a man who was concerned and involved with his children as well as Mother's children. Mother had remained drug and alcohol free for six years and attended AA. She regularly visited her son during the course of the guardianship and made an effort to remain in his life. Following the hearing, the trial court denied Mother's petition.

On appeal, we noted that there was absolutely no indication that Mother was presently an unfit parent. *Id.* at 231. Although she had difficulties with substance abuse in the past, she had remained sober for six years. Her current husband was concerned and involved with her children, and Mother was successfully raising another son. We pointed out that it was Grandmother's burden to prove Mother's unfitness at the present time, not at some time in the past. *Id.*

Additionally, Mother did not voluntarily abandon her son for any considerable length of time. She continued to regularly visit her son and remain an important part of his life during the course of the guardianship. She also attempted to terminate the guardianship several times.

We concluded that the evidence did not reveal the existence of any unfitness or

long-term voluntary abandonment or relinquishment of L.L. on the part of Mother. *Id.* at 233. Further, we found no compelling, real, or permanent interests of L.L. that would be best served by him remaining in Grandmother's custody. *Id.* Therefore, the presumption in favor of Mother obtaining custody of L.L. was not rebutted. *Id.*

We also pointed out that permitting Grandmother to retain custody of L.L. could have potentially adverse public policy consequences. *Id.* Specifically, we explained that for the sake of children, the society should encourage parents who are experiencing difficulties raising them to take advantage of an available "safety net," such as a grandparent or aunt or uncle who is willing to accept temporary custody of the child. *Id.* It would discourage such action by parents in difficult straits and discourage efforts to better their life situation if their chances of later reuniting with their children were reduced. *Id.*

We therefore reversed and remanded with instructions to terminate the guardianship. *Id.* We noted that on remand, the trial court could enter such orders as it deemed necessary regarding counseling for the parties and other related matters, which we trusted would be followed by the parties. *Id.*

The facts before us are analogous to those in *L.L.* Specifically, Sokol left her daughters with her brother and his wife ("Aunt and Uncle") in 2002 because of her depression and substance abuse. Aunt and Uncle were appointed guardians of the girls in August 2002. Evidence presented at the hearing on Sokol's petition to terminate the guardianship revealed that Sokol had completed two drug and alcohol recovery programs and had been sober since January 2003. She also attended four to seven AA or NA meetings per week, led recovery groups, and sponsored other members. She continued to see a therapist regularly and took medication for her depression.

Sokol receives Social Security Disability benefits and will receive child support from the girls' father. She has been in a stable relationship for four years and lives in a house with room for the girls. Sokol has kept in regular contact with the girls during the course of their guardianship. She speaks to them at least three times a week, and sometimes daily, and the girls have spent summers and holidays with her.

Here, as in *L.L.,* there was absolutely no indication that, at the time of the hearing, Sokol was an unfit parent. Additionally, Sokol did not voluntarily abandon her daughters for any considerable length of time. Lastly, we find no compelling, real, or permanent interests of K.K. and M.K. that would be best served by remaining in the custody of their Aunt and Uncle. Therefore, as in *L.L.,* the presumption in favor of Sokol obtaining custody of her daughters was not rebutted.

Further, we agree with the court in *L.L.* that society should encourage parents who are experiencing difficulty raising their children to take advantage of an available relative to take temporary custody of the children rather than discouraging parents by reducing their chances of later reuniting with their children. We therefore reverse and remand this case with instructions to terminate the guardianship.

Reversed and remanded.

DARDEN, J., and MATHIAS, J., concur.